IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | No. 3:18cr312 |
| | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| BRIAN BOEHM, | : | |
|     Defendant | : | |

............................................................................................................

## ORDER

**AND NOW**, to wit, this 3rd day of December 2025, it is hereby **ORDERED** as follows:

1) *This order contains discussion of inaccurate legal arguments that appear to be generated by artificial intelligence ("AI") using legitimate case citations.*

2) On July 23, 2019, Defendant Brian Boehm entered a guilty plea before the Honorable Richard A. Caputo on one count of attempted online enticement of a minor in violation of 18 U.S.C. § 2422(b). (Doc. 32, Guilty Plea).

3) On December 6, 2019, Judge Caputo sentenced defendant to one hundred twenty (120) months of incarceration with ten (10) years of supervised release. (Doc. 52, Judgment).

4) On November 26, 2025, the Clerk of Court docketed defendant Brian Boehm's "motion for clarification of supervised release conditions," (Doc. 60), proposed order, (Doc. 60-1), summary of argument, (Doc. 60-2, ECF

p. 5-8), and statement of compliance and good faith, (Doc. 60-3). The Clerk of Court also docketed several additional filings as a brief in support. (Doc. 61).

5) In Boehm's motion, he advises that he has been in Bureau of Prisons ("BOP") prerelease custody since July 23, 2024 and was scheduled to begin supervised release on November 24, 2025. (Doc. 60 at 2).

6) According to Boehm, he has been permitted to use an Apple iPhone and Apple MacBook Pro laptop while in BOP prerelease custody. (Doc. 60 at 2; Doc. 61 at ECF p. 3; Doc. 61-2, Def. Ex. A).

7) Pursuant to the judgment entered by Judge Caputo, Boehm is subject to an additional term of supervised release providing that he "must allow the probation officer to install computer monitoring software on any computer (as defined in 18 U.S.C. § 1030(e)(1))" that he uses. (Doc. 52 at ECF p. 6).

8) Additionally, per the defendant, the United States Probation Office has instructed him that compliance with this provision requires him to replace his in-use Apple devices, pay for third-party monitoring software or services, and comply with "additional technology restrictions not stated in the [j]udgment."[1] (Doc. 60 at 3).

---

[1] Although the "additional technology restrictions" referenced in Boehm's motion are vague, such restrictions may include a possible ban on the use of "content creation software." (See Doc. 61 at 3). Boehm specifically references the Adobe Creative Suite and an internet-based

9) Although framed as a request for "clarification" of the judgment, Boehm requests an order:

1. **"Clarifying that the computer monitoring condition does not authorize probation to require device replacement"** when existing equipment is compatible with monitoring software and achieves the same monitoring objective;
1. **"Confirming that requiring device replacement violates 18 U.S.C. § 3583(d)(2)'s mandate"** that conditions impose "no greater deprivation of liberty than is reasonably necessary" when a less restrictive, equally effective alternative (monitoring existing devices) is available;
1. **"Confirming that no financial obligations related to monitoring—including device purchase, software subscriptions, or service fees—are imposed absent explicit language in the Judgment"** pursuant to *United States v. Miller*, 594 F.3d 172 (3d Cir. 2010);
1. **"Specifying that Defendant's obligation is to "allow" software installation on his existing devices,"** and that compliance with this passive duty does not require affirmative expenditure or device replacement;
1. **"Affirming that any future modification of supervised release conditions, including restrictions on internet use, business operations, or technology, must be imposed by this Court"** under 18 U.S.C. § 3583(e), not through administrative directive; and
1. Granting any other relief the Court deems just and proper.

(Doc. 60 at p. 8).

10) Boehm's prior motion seeking compassionate release did not use numerous asterisks in its advocacy or default to numbered lists to advance any argument. (Doc. 54).

11) Consequently, based on a review of Boehm's filings, it appears that he has relied on at least one generative AI tool to advance his requests for relief.

---

software service called CapCut by name. Id. CapCut includes generative AI features that allow users to generate images or videos from a written "script." CapCut, AI Image Generator, https://www.capcut.com/tools/ai-image-generator, last accessed December 1, 2025). CapCut, Free AI Video Generator, https://www.capcut.com/tools/ai-video-generator (last accessed December 1, 2025).

3

12) The AI tool possibly used was sophisticated enough to include pinpoint citations to precedential Third Circuit authority.

13) Fortunately for Boehm, the cases cited in his motion are very real decisions by the Third Circuit Court of Appeals.

14) Unfortunately for Boehm, these cases are misrepresented in his motion and his motion also contains false quotations from these opinions.

15) For example, Boehm cites United States v. Holena, 906 F.3d 288, 291 (3d Cir. 2018) for the proposition that "only the court may impose conditions of supervised release[,]" not a probation officer. (Doc. 60 at 3, 7).

   a. Although this not an inaccurate statement of the law[2], Holena did not involve a probation officer imposing conditions of supervised release.  Rather, in Holena, the Third Circuit Court of Appeals determined that restrictions on a criminal defendant's computer and internet usage were contradictory and more restrictive than necessary for the purposes of supervised release. 906 F.3d at 291–94.  Those conditions were imposed by the trial judge, not the United States Probation Office.  As further noted in the opinion,

---

[2] See 18 U.S.C. § 3583(a) (The court, in imposing a sentence to a term of imprisonment for a felony or a misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment…").

4

> the trial judge provided "the probation office no guidance on the sorts of internet use that it should approve." Id. at 293.

16) Defendant also cites United States v. Albertson, 645 F.3d 191, 197 (3d Cir. 2011) for the proposition that "[p]robation officers implement judicial conditions but lack authority to expand them." (Doc. 60 at 3). Later in the motion, defendant argues that, in Albertson, "the Third Circuit reinforced: Probation officers 'lack authority' to expand judicially-imposed conditions." (Doc. 60 at 7) (asterisks omitted).

   a. Albertson did not involve a probation officer expanding conditions of supervised release set by a judge. Rather, Albertson involved an appellate determination that a trial judge imposed an overbroad internet ban and monitoring requirement for a defendant on supervised release. Id. at 197–200. Furthermore, to the extent that defendant attempted to quote Albertson in his motion, the phrase "lack authority" does not appear in the version of the opinion published on Westlaw and in the Federal Reporter, Third Series.

17) Boehm also cites United States v. Miller, 594 F.3d 172, 178 (3d Cir. 2010) for the proposition that "financial obligations, including monitoring fees must be explicitly authorized by the court." (Doc. 60 at 3) (asterisks

5

omitted).  Defendant further cites Miller for the argument: "When Congress and courts intend to impose costs, they say so explicitly." (Doc. 60 at 4). Additionally, later in the motion, defendant states that, "In Miller, the Third Circuit held unequivocally: 'The district court must explicitly impose' supervision costs." (Doc. 60 at 7) (citing "Miller, 594 F.3d at 178") (asterisks omitted).

    a. Sure enough, Miller does not stand for the points of law the defendant says it does.  That is, Miller did not involve computer monitoring fees imposed on a criminal defendant facing internet restrictions on supervised release.  Instead, Miller addressed the imposition of broad ban on internet access imposed on a defendant facing a lifetime term of supervised release and whether the defendant waived any right to challenge that sentence. Miller, 594 F.3d at 177–189.  The "quotes" from Miller in Boehm's motion are also false.

18) Therefore, in what would be an interesting twist, the defendant has possibly misused the internet to argue that he should not have to use certain devices to access the internet or be imposed costs for internet monitoring by the United States Probation Office as part of his supervised release.

19) Courts within the appellate jurisdiction of the Third Circuit have sanctioned lawyers and pro se litigants for citing to non-existent legal authority generated by AI. Allbaugh v. Univ. of Scranton, No. 3:24-CV-2237, 2025 WL 2484188, at *1 (M.D. Pa. Aug. 28, 2025) (Mehalchick, J.); Bevins v. Colgate-Palmolive Co., No. CV 25-576, 2025 WL 1085695, at *6 (E.D. Pa. Apr. 10, 2025) (Baylson, J.); Bunce v. Visual Tech. Innovations, Inc., No. CV 23-1740, 2025 WL 662398, at *4 (E.D. Pa. Feb. 27, 2025) (Scott, J.).

20) On what seems to be a daily basis, judges in other jurisdictions have sanctioned lawyers and pro se litigants for including other types of suspected AI hallucinations in their filings, such as misrepresentations of the law and false quotes from reported cases. See e.g., The Doc App, Inc. v. Leafwell, Inc., No. 2:25-CV-838-SPC-NPM, 2025 WL 3288251, at *6 (M.D. Fla. Nov. 26, 2025) (Chappell, J.) (imposing several sanctions, including a referral of a potential AI-using attorney to the Florida Bar); Andre, v. Warden, FCI Danbury, No. 3:24-CV-01295 (VDO), 2025 WL 3281732, at *1 (D. Conn. Nov. 25, 2025) (Oliver, J.) (dismissing with prejudice a pro se post-judgment motion stemming from a petition for writ of habeas corpus).

Case 3:18-cr-00312-JKM   Document 64   Filed 12/03/25   Page 8 of 9

21)     The improper use of generative AI wastes the time and resources of the court, particularly because certain models can generate persuasive legal arguments after being trained using documents written by lawyers and judges.[3]

22)     Despite Boehm's conduct, however, the court appreciates that many "free," publicly-available AI tools tout their ability to conduct in-depth research. Moreover, the defendant is a formerly incarcerated individual attempting to advocate his position as he transitions from a prison setting to society.

23)     Thus, the court will not, at this time, escalate this matter on its own accord.

24)     Instead, the court hereby **ADMONISHES** Defendant Brian Boehm for misrepresenting and misquoting Third Circuit precedent in his "motion for clarification of supervised release conditions."

25)     Defendant's motion, (Doc. 60), is **DISMISSED** *without prejudice.*

26)     Should the defendant decide to file any future motion, brief, or other paper with the court, he shall file a separate affidavit disclosing whether generative AI has been used to prepare the filing.

---

[3] Boehm's motion has been filed in a criminal matter where "[s]cheduling preference must be given...as far as practicable." FED. R. CRIM. P. 50.

8

27) Such disclosure shall include reference to the AI tool used and an explanation as to how it was used. Defendant shall identify each section of each filing drafted with the aid of an AI tool.

28) Furthermore, in the affidavit, the defendant shall certify that he has reviewed each citation to legal authority or to the record and that he has personally checked the accuracy of the citation and the proposition for which it is offered.

Date: 12/3/25

BY THE COURT:

JUDGE JULIA K. MUNLEY
United States District Court